**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

MOISÉS VELÁZQUEZ-ORTIZ, ET AL.,

   *Plaintiffs*,

     v.                       CIV. NO. 11-1757 (PG)

FEDERAL     DEPOSIT     INSURANCE
CORPORATION  *as  receiver  for
Eurobank of Puerto Rico*,

   *Defendant*.

### OPINION AND ORDER

Plaintiff Moisés Velázquez-Ortiz and his spouse Virginia Claudio-Rodríguez (hereinafter the "Plaintiffs") were lessors of Eurobank of Puerto Rico ("Eurobank"). When Eurobank failed and was brought into receivership by the Federal Deposit Insurance Corporation (FDIC), the FDIC repudiated the lease agreements entered into by Plaintiffs and Eurobank. Plaintiffs filed two proofs of claim before the FDIC requesting payment for the postrepudiation rent they claim was due under the agreements. The FDIC disallowed those claims. Dissatisfied, Plaintiffs brought this action charging the FDIC with breach of contract claims and requesting this Court reverse said agency's disavowal of their claims. The matter is before the Court on the FDIC's motion to dismiss. Docket No. 5. Plaintiffs opposed the motion and the FDIC filed a reply. Dockets No. 9 and 12, respectively. For the reasons that follow, the Court **GRANTS** the FDIC's motion to dismiss.

### I. BACKGROUND

#### A. Factual Background

The following factual narrative is drawn directly from the complaint; the Court takes it as true for purposes of resolving the FDIC's motion to dismiss.

Plaintiffs are residents of Humacao, Puerto Rico and among other things, provide property leasing services to third parties. They have served as lessors to Eurobank since July 1, 2005.

Eurobank provided financial services as a Bank in Puerto Rico until April 30, 2010. On that date, Defendant FDIC became the receiver of Eurobank, under 12 U.S.C. §1891, *et seq*. The FDIC is a United States government corporation. It is organized and exists under the laws of the United States with its principal place of business located in Washington, DC.

On May 12, 2005, Plaintiffs acquired three lots of land in Ciénaga Abajo Ward of the municipality of Rio Grande, Puerto Rico. The purchase of these lands was financed by Eurobank, with the purpose of Eurobank leasing back from the purchasers-plaintiffs certain part of such premises to build a banking branch and a lot to serve as a depository of repossessed motor vehicles, boats, and the like.

Plaintiffs provided Eurobank with the lease of certain properties since July 1, 2005. Under the purchase-sale financing and lease agreements, Eurobank paid a monthly lease for the premises, for which rent was deposited in Plaintiffs' bank account held in Eurobank. Upon depositing the monies to cover the cost of leasing the premises, the funds were debited to cover the mortgage loans' monthly payments, as these were rents ceded to Eurobank.

Such an arrangement worked without problems until the FDIC took possession of Eurobank on April 30, 2010. Thereafter, the payments continued to be made until October 2010, month in which the Eurobank leases were repudiated by the FDIC.

Subsequently, on January 24, 2011, the FDIC received two proofs of claims filed by Plaintiffs based on the deficiencies of the repudiated lease agreements, one for amount of $1,398,540.00 (for the post-repudiation unpaid lease of the premises where the bank branch was located). The second, for the amount of $39,000.00 (for the lot used as depository for repossessed motor vehicles, boats and the like).

Thereafter, on June 6, 2011, the FDIC notified Plaintiffs of the disallowance of the claims mentioned above. The notice of disallowance of claims included language advising claimants that if they did not agree

with the disallowance, they had the right to file, within a 60-day period of the disallowance, a lawsuit on their claims in the United States District Court for the District within which the failed institutions principal place of business was located.

Defendant failed to comply with the terms of the lease agreements between Eurobank and Plaintiffs, causing Plaintiffs to default under payments to Eurobank's successors in interest [namely Oriental Bank & Trust (Oriental Bank), another financial institution based in Puerto Rico].

On April 14, 2011, Oriental Bank sued Plaintiffs in the local courts for collection of monies and foreclosure of mortgage, claiming that as of March 30, 2011, Plaintiffs owed $6,149,645.43. Civil Case No. K CD2011-0886(906), Tribunal of First Instance, Superior Court of San Juan.

In its suit, Oriental Bank alleges that it acquired and became the holder in good faith of Eurobank's loans and that, at present, it is the creditor-assignee of all of the rights of Eurobank under the loan agreements with the herein Plaintiffs. On the other hand, Oriental Bank does not recognize being the successor of Eurobank's obligations.

Plaintiffs were induced by Eurobank to purchase the realty that they would then lease to Eurobank. The property where the banking branch was located was leased for an initial period of 20 years. In other words, the loan to finance the purchase of the property would pay itself substantially through the long term lease agreement of Plaintiffs' property. Eurobank's successor in interest, however, deprived Plaintiffs of their right to the contractual rental income as well as of their right to claim the monies due after the repudiation of the lease, which is no different than a breach of contract between the parties and their successors in interest.

The repudiation of the lease agreement caused harm to Plaintiffs. They have suffered indignation caused by the inevitable default of their loans with Eurobank and its successors in interest as a direct cause of

the breach of contract based on the repudiation of its lease agreements with said banking or financial institutions.

Moreover, the disallowance of Plaintiffs' claims for the unexpired leases' deficiencies deprived them of any other remedy as a result of the breach of contract, practically placing them on risk of having to file for bankruptcy protection, forcing them to defend themselves from legal suits in the Commonwealth Courts for a cause that plaintiffs did not bring upon themselves, but by acts contrary to previous acts of Eurobank and its successors in interest.

### B. Procedural Background

On August 4, 2011, Plaintiffs filed the instant action solely against the FDIC as receiver for Eurobank. Docket No. 1. In their complaint, they request this Court reverse the FDIC's determination disallowing their proofs of claims for the postrepudiation contractual rent due under the unexpired lease agreements between them and Eurobank. Oriental Bank, as a successor in interest of Eurobank, was not included in this action as a defendant.

On September 21, 2011 the FDIC responded to the allegations with the motion to dismiss currently pending before the Court. Docket No. 5. In it, the FDIC informed the Court that on August 2, 2011 the FDIC's Board of Directors made a "formal and binding" determination that Eurobank's receivership estate lacked sufficient assets to make any distribution aimed at satisfying general unsecured claims against the estate (hereinafter the "no value determination"). As such, Defendant argues that even if Plaintiffs are able to ultimately prevail on the merits of their claims, they cannot obtain any relief from the FDIC as they are general unsecured creditors and will never be able to obtain payment on their claims, given the FDIC's no value determination. Thus, the FDIC maintains that as the Court is unable to provide any meaningful relief to Plaintiffs, the case fails to present a justiciable case or controversy as required by Article III of the Constitution and should be dismissed.

     Plaintiffs filed a brief opposition to Defendant's request. Docket No. 9. There, Plaintiffs for the first time claimed they were entitled to a setoff against the amounts owed to Oriental Bank. The FDIC replied arguing, *inter alia*, that Plaintiffs were not entitled to amend their complaint by bringing a new claim for setoff in their opposition, and that in any event, Plaintiffs failed to implead Oriental Bank, a necessary party to this action. <u>See</u> Docket No. 12. The Court will address these arguments below after outlining the applicable standard of review for Rule 12(b)(1) motions.

## II. <u>STANDARD OF REVIEW</u>

     Motions to dismiss brought under FED. R. CIV. P. 12(b)(1) and 12(b)(6) are subject to the same standard of review. <u>See</u> <u>Negrón-Gaztambide v. Hernández-Torres</u>, 35 F.3d 25, 27 (1st Cir. 1994). Firstly, when ruling on a motion to dismiss for failure to state a claim, a district court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." <u>Rivera v. Centro Médico de Turabo, Inc.</u>, 575 F.3d 10, 15 (1st Cir. 2009) (<u>citing</u> <u>LaChapelle v. Berkshire Life Ins. Co.</u>, 142 F.3d 507, 508 (1st Cir. 1998)). Additionally, courts "may augment the facts in the complaint by reference to (i) documents annexed to the complaint or fairly incorporated into it, and (ii) matters susceptible to judicial notice." <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 306 (1st Cir. 2008) (internal citations and quotation marks omitted).

     In determining whether dismissal of a complaint is appropriate pursuant to Rule 12(b)(1) or 12(b)(6), the court must keep in mind that "[t]he general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief.... this short and plain statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests." <u>Gargano v. Liberty Intern. Underwriters, Inc.</u>, 572 F.3d 45, 48 (1st Cir. 2009) (internal citations

and quotation marks omitted). Nevertheless, "even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has ... held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

### III. DISCUSSION

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. 101-73, 103 Stat. 183, extensively amended the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811 et seq., following the turmoil caused by the savings and loan crisis of the 1980s. The FIRREA provides for the FDIC to be appointed as receiver for financial institutions that become insolvent and are closed down by the government.

As receiver, the FDIC is furnished with broad powers to collect the assets of failed institutions, operate the institutions, and settle claims involving the institutions. 12 U.S.C. §1821(d). Congress granted the FDIC broad discretion so that it may advance important public policy goals such as avoiding a national banking crisis and promptly resolving the affairs of insolvent banks. United States v. Sweeny, 226 F.3d 43, 45-46 (1st Cir. 2000). The FDIC is also expected to "make efficient use of public funds." Id. (quoting RTC v. Thornton, 41 F.3d 1539, 1542 (D.C.Cir.

1994)). In this regard, Congress vested the FDIC with the power to allow or disallow claims against a failed institution's receivership estate. 12 U.S.C. §1821(d)(5). In addition, Congress also limited the maximum liability of the FDIC as receiver to the amount a creditor of the receivership estate would have received in a liquidation under federal priority regulations. First Indiana Fed. Sav. Bank v. FDIC, 964 F.2d 503, 507 (5th Cir. 1992).

In this case, Plaintiffs charge the FDIC with a breach of contract claim stemming from its repudiation of the lease agreements. They adduce the FDIC erred when it disallowed their claims for postrepudiation rent and argue they are entitled to damages in the sum of $1,437,540. In the alternative, Plaintiffs maintain they should be afforded a setoff against the amounts they owe Oriental Bank pursuant to the mortgage note. The Court will address these arguments in turn.

### A. Disallowance of claims

Plaintiffs' complaint prays the Court "reverse the FDIC's determination to disallow plaintiffs' proofs of claims for the contractual rent owed on the unexpired lease agreements between plaintiffs and Eurobank and/or its successors in interest, and to allow said proofs of claims as filed, one for $1,398,540.00 and the other for $39,000.00 for a total amount claimed of $1,437,540.00." Compl. at 7. In essence, Plaintiffs' claims are confined to seeking the reversal of the FDIC's disallowance of their proofs of claims; they neither impeach the validity of the FDIC's finding that the lease agreements in question were "burdensome" to the receivership estate nor do they challenge the FDIC's "no value determination."

Pursuant to 12 U.S.C. §1821(d)(5)(D) the FDIC has authority to "disallow any portion of any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of the receiver." Section 1821(d)(5)(E) explicitly states that "[n]o court may review the [FDIC's] determination ... to disallow a claim." At odds with this provision, however, is §1821(d)(6)(A), which states that a claimant

may "file suit on such claim ... in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located ... (and such court shall have jurisdiction to hear such a claim)." Plaintiffs in this case have grounded their claims for relief under this latter section, and thus this Court has jurisdiction to entertain them, bearing in mind that when a claimant seeks judicial relief under §1821(d)(6)(A), "review is by a de novo determination of the claim, not a review of the administrative disallowance of the claim." Muhammad v. FDIC, 751 F.Supp.2d 114, 121 (D.D.C. 2010); Brady Dev. Co. v. RTC, 14 F.3d 998, 1003 (4th Cir. 1994). In light of this, the Court now proceeds to review Plaintiffs' breach of contract claim de novo.

Pursuant to §1821(e)(1), the FDIC may disaffirm or repudiate any contract or lease-- "(A) to which such an institution is a party; (B) the performance of which the [FDIC], in [its] discretion, determines to be burdensome; and (C) the disaffirmance or repudiation of which the [FDIC] determines, in [its] discretion, will promote the orderly administration of the institution's affairs." It follows that the FDIC enjoys broad discretion in deciding which lease agreements to repudiate, and nothing in the Plaintiffs' complaint seems to challenge the FDIC's finding that the lease agreements in question where burdensome, and that repudiating them would have promoted the orderly administration of Eurobank's affairs. As such, the Court must presume that the FDIC's repudiation of the lease agreements was valid and carried out in conformance with the FIRREA. Now, the Court must examine the effects of such a repudiation on Plaintiffs' claims.

Once the FDIC repudiates a contract it is freed from having to comply with the contract. Howell v. FDIC, 986 F.2d 569, 571 (1st Cir. 1993). Repudiation is treated as a breach of contract giving rise to an ordinary contract claim for damages. See id.; ALLTEL Info. Svcs. v. FDIC, 194 F.3d 1036, 1039 (9th Cir. 1999). But damages are not assessed according to ordinary contract principles; rather, they must be

determined in accordance with FIRREA's terms. <u>MCI Communs. Servs. v.</u>
<u>FDIC</u>, 808 F.Supp.2d 24, 28 (D.D.C. 2011). Section 1821(e)(4) states the
following:

> (4) Leases under which the institution is the lessee
>
> > (A) In general
> > If the conservator or receiver disaffirms or repudiates a
> > lease under which the insured depository institution was
> > the lessee, *the conservator or receiver shall not be*
> > *liable for any damages (other than damages determined*
> > *pursuant to subparagraph (B)) for the disaffirmance or*
> > *repudiation of such lease.*
> >
> > (B) Payments of rent
> > Notwithstanding subparagraph (A), the lessor under a lease
> > to which such subparagraph applies shall—
> >
> > > (i) be entitled to the contractual rent accruing
> > > *before* the later of the date—
> > >
> > > > (I) the notice of disaffirmance or repudiation is
> > > > mailed; or
> > > >
> > > > (II) the disaffirmance or repudiation becomes
> > > > effective, unless the lessor is in default or
> > > > breach of the terms of the lease;
> > >
> > > (ii) *have no claim for damages under any acceleration*
> > > *clause or other penalty provision in the lease*; and
> > >
> > > (iii) have a claim for any unpaid rent, subject to all
> > > appropriate offsets and defenses, due as of the date
> > > of the appointment which shall be paid in accordance
> > > with this subsection and subsection (i) of this
> > > section.

12 U.S.C. §1821(e)(4)(our emphasis). Subsection (e)(4)(A) clearly
establishes that the FDIC will not be liable for any damages caused to
the lessor by the repudiation, except for the type of damages set out in
subsection (e)(4)(B). Pursuant to subsection (e)(4)(B)(i), Plaintiffs, as
lessors of Eurobank, would only be entitled to the contractual rent
accruing up until the later of either the date when the Plaintiffs
received notice of the disaffirmance of their leases or when the
disaffirmance of those leases became effective.

    Plaintiffs do not argue that the FDIC has not paid them for the
contractual rent accruing before the repudiation of the agreements—by
their own admission they received payments until October 2010, month in

which the FDIC repudiated the leases—rather, Plaintiffs seek the FDIC pay them for the contractual rent accruing *after* the FDIC repudiated the leases. Unfortunately for Plaintiffs, subsection (e)(4)(B) does not afford them relief on these claims, as they are claims for future rents which are clearly proscribed by the FIRREA. See <u>Resolution Trust Corp. v. Ford Motor Credit Corp.</u>, 30 F.3d 1384 (11th Cir. 1994)(FIRREA clearly prohibited lessor from any claim for future rents from any party or against any property); <u>Howell</u>, 986 F.2d at 573 (stating that the "lessor's damages are limited to past rent and loss of future rent is not compensable"); <u>Unisys Fin. Corp. v. Resolution Trust Corp.</u>, 979 F.2d 609, 611 (7th Cir.1992) (explaining that the "lessor's damages claim is completely exhausted except for back rent"); <u>and see Qi v. FDIC</u>, 755 F.Supp.2d 195, 201 (D.D.C. 2010)(collecting further cases).

    In light of the above, it is clear that the FDIC was correct in disallowing Plaintiffs' proofs of claims, as these were claims for future rents, shunned by the FIRREA. As such, Plaintiffs' demand for payment of the contractual rents accruing after the FDIC's repudiation of the agreements does not proceed and thus the same is **DISMISSED WITH PREJUDICE**.

### B. Setoff

    In their opposition to the FDIC's motion to dismiss, Plaintiffs argue for the first time that they are entitled to setoff relief as they "had mutual debts with Eurobank and its receivership estate." Docket No. 12, ¶5. Plaintiffs point out that the FDIC owes them $1,437,540 in unpaid, post repudiation rent under the lease agreements, and that Plaintiffs in turn owe Oriental Bank the sum of $6,149,649.43, pursuant to the terms of the mortgage note they originally executed in favor of Eurobank. Thus, Plaintiffs are seeking to reduce the amount they owe to Oriental Bank as mortgagors-debtors by the amount they claim they are due from the FDIC as lessors-creditors of Eurobank. The FDIC argues that Plaintiffs' claims for setoff are unavailing, as they failed to plead for any setoff relief in their complaint and, in any event, they failed to

name the party to whom their debt is owed and against whom the setoff is asserted, namely Oriental Bank. For the reasons that follow, the Court agrees with the FDIC.

The Court notes that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Car Carriers v. Ford Motor, 745 F.2d 1101, 1107 (7th Cir. 1984); see also Ocasio v. Hogar Geobel, 693 F.Supp.2d 167, 172 (D.P.R. 2008). In this case, Plaintiffs only advanced their setoff claim in their opposition to the FDIC's motion to dismiss. Although the Court is aware that the FDIC published its "no value determination" in the Federal Register on August 16, 2011, that is 12 days after Plaintiffs filed their complaint, this does not excuse Plaintiffs' failure to include a plea for setoff in their complaint. The "no value determination" was in no way a condition precedent for Plaintiffs' setoff claim, and even if they thought it was, Plaintiffs have not projected a minimum of effort to amend their complaint to include a setoff claim. Thus, this Court will not consider after-the-fact allegations in determining the sufficiency of Plaintiffs' complaint under Rule 12(b)(1) or 12(b)(6). See Federico v. Home Depot, 507 F.3d 188, 201-2 (3rd Cir. 2007).

Moreover, even if the Court were to allow the claim for setoff to proceed, the same would ultimately founder as Plaintiffs have failed to join a required party to this action, namely Oriental Bank. There is no question that Oriental Bank, as successor in interest to Eurobank, has a protected property interest in the mortgage note executed by Plaintiffs. If the Court were to order a setoff against the amounts due to Oriental Bank under that note, said Bank's property interests would be undermined, giving rise to a due process violation. The better approach for Plaintiffs would have been to join Oriental Bank in this action, or to join the FDIC in their state court case against Oriental Bank. Plaintiffs have hitherto failed to do so, even in light of the FDIC's reply, which clearly beaconed the lack of Oriental Bank's presence in this action as an impediment to Plaintiffs' claims for setoff. Thus, considering the

Civil No. 11-1757 (PG)                                                    Page 12

procedural deficiencies that surround Plaintiffs' claim for setoff, the Court elects to **DISMISS** the same **WITHOUT PREJUDICE.**

### IV. <u>CONCLUSION</u>

For the reasons expounded above, Defendant FDIC's motion to dismiss is **GRANTED**; Plaintiffs' claims for breach of contract are **DISMISSED WITH PREJUDICE,** and the claims for setoff are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED**

In San Juan, Puerto Rico, April 18, 2012.


<u>*s/ Juan M. Pérez-Giménez*</u>
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**